# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW MICHAEL VOELKNER,

        Defendant-Appellant.

UNPUBLISHED
December 11, 2014

No. 317827
Wayne Circuit Court
LC No. 12-011218-FH

---

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals from his convictions following a jury trial of receiving, transporting, or concealing a stolen firearm under MCL 750.535b, and possessing a firearm during the commission of a felony (felony-firearm) under MCL 750.227b by right. He was sentenced to six months probation for the receiving and concealing conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND

In January 2012, officers from the Farmington Hills Police Department responded to reports of a domestic disturbance at defendant's residence. At the time of this incident defendant was a police officer in the city of Taylor, Michigan. Farmington Hills responding Officer Brian Holder conducted a search of defendant's residence after defendant disclosed multiple locations of firearms. At defendant's trial, a sergeant with the Farmington Hills Police Department testified that it was the policy of the Farmington Hills Police Department to confiscate firearms from anyone involved in an incident of domestic violence. Holder discovered a shotgun in the garage to the residence that was later determined to belong to the Taylor Police Department. While no domestic assault charges were brought against the defendant, he was charged and convicted of offenses related to the shotgun owned by the Taylor Police Department.

Defendant claimed at trial that he had taken the department-issued shotgun home by mistake. However, the shotgun issued by the department to the defendant was recovered from his work locker. Taylor Police Department Commander John Blair testified that defendant told him he had found the department's shotgun in a patrol car issued to him and had forgotten that he had the weapon. Taylor Police Department Sergeant Marc Gaynier testified that he witnessed

defendant put a department-owned shotgun in his personal vehicle sometime in September 2011. When Gaynier asked defendant what he was doing, defendant reportedly responded that he always takes his shotgun home. Gaynier testified that he informed defendant that shotguns are not to be taken home and ordered him to put the weapon back inside the station. Gaynier believed defendant had followed the order.

## II. MOTION TO SUPPRESS

First, defendant argues that the trial court erred in denying his motion to suppress evidence of the conversation between himself and Taylor Police Department Commander Blair. Defendant contends the statements made to Blair were inadmissible under *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967). We review de novo the trial court's denial of a motion to suppress. *People v Walters*, 266 Mich App 341, 352; 700 NW2d 424 (2005). The trial court's factual findings are reviewed for clear error. *Id.* "A finding is clearly erroneous when, although evidence supports it, this Court is left with a firm conviction that the trial court made a mistake." *Id.* quoting *Featherston v Steinhoff*, 226 Mich App 584, 588; 575 NW2d 6 (1997).

Under *Garrity, supra*, self-incriminating statements made by a law-enforcement officer under the threat of discharge cannot be used in subsequent criminal proceedings against that officer. *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008). The central issue in a *Garrity* challenge is whether the officer's statements were made under threat of discharge or voluntarily *People v Jobson*, 205 Mich App 708, 711; 518 NW2d 526 (1994). If the statements were made under threat of discharge during a disciplinary hearing or departmental investigation, they will be considered coerced and involuntary "in violation of the right against self-incrimination under the Fifth Amendment." *Id.* at 708.

The trial court did not clearly err in denying defendant's motion to suppress when defendant's statements were voluntary and not made under the threat of discharge. Blair testified at the suppression hearing that when defendant returned to work after the shotgun was found in his home, he walked into Blair's office, "without being requested or compelled, . . . sat down, and began to provide a[n] explanation of how the shotgun arrived at his home." Blair further testified that he did not prompt defendant's statements by asking questions, and only asked one follow-up question once defendant explained his actions. Blair said that after hearing defendant's explanation he became uncomfortable with the conversation and walked to the lieutenant's office. Blair said defendant followed him, continuing to give an explanation as to why he was in possession of the shotgun. Blair told defendant that he did not want to talk about the issue anymore. Incredibly, at the suppression hearing the defendant offered no testimony regarding his conversations with Blair. The record is also devoid of any proof that a formal investigation had been launched by the Taylor Police Department against the defendant. Instead the argument is made that the domestic violence incident and weapons seizure required that prior to any conversation, whether initiated by the defendant or by any agent of the department, required a *Garrity* warning. There was no dispute that no such warning was given. The defendant argues therefore, any statement given without the warning is inadmissible. The defendant misapprehends the law.

There was also no indication that defendant spoke to Blair under the context of a formal investigation or disciplinary hearing, or under the threat of discharge. The trial court properly found that defendant's statements were made voluntarily, without coercion, and in compliance with the Fifth Amendment. US Const, Am V.

## III. VENUE

Next, defendant argues that the trial court erred in denying his motion for new trial because the prosecution failed to prove that venue was proper in Wayne County. However, under MCL 767.45(1)(c) "[n]o verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury." Here, defendant raised this issue in a motion for new trial. As a result, defendant is not entitled to relief and we decline to further address the issue.

## III. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that the trial court erred in denying his motion for new trial because the prosecution failed to present sufficient evidence to sustain the convictions. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

When determining whether a defendant's conviction is supported by sufficient evidence, this Court must ask whether a "rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation omitted). All evidence should be viewed in a light most favorable to the prosecution. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime, including the defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622-623; 751 NW2d 57 (2008); see also *Carines*, 460 Mich at 757.

In order to convict defendant under MCL 750.535b,[1] plaintiff had to establish beyond a reasonable doubt (1) that defendant transported, received, concealed, or stored a firearm, (2) that

---

[1] The statute reads in its entirety:

> (1) A person who transports or ships a stolen firearm or stolen ammunition, knowing that the firearm or ammunition was stolen, is guilty of a felony, punishable by imprisonment for not more than 10 years or by a fine of not more than $5,000.00, or both.

> (2) A person who receives, conceals, stores, barters, sells, disposes of, pledges, or accepts as security for a loan a stolen firearm or stolen ammunition, knowing that the firearm or ammunition was stolen, is guilty of a felony,

the firearm was stolen, and (3) that the defendant knew the firearm was stolen. On appeal, defendant asserts that the prosecution failed to establish the last two elements.

Blair testified that the shotgun retrieved from defendant's residence had been taken out of circulation and could not have been assigned to defendant as a duty weapon. Further, that the shotgun was kept inside Blair's office. Taylor Police Department Sergeant Anthony Neal testified that he recovered defendant's department-issued shotgun from defendant's work locker. Blair confirmed that the shotgun assigned to defendant was not the same shotgun seized from defendant's home. This evidence, and the reasonable inferences arising therefrom, establishes that defendant transported, received, concealed, or stored a stolen firearm.

There was also sufficient evidence for the jury to find that defendant intended to steal the shotgun. Blair and two other officers testified that all officers of the Taylor Police Department are instructed to not take their shotgun home. Gaynier testified that the day after he saw defendant attempting to take home the department-issued shotgun, he addressed the issue at roll call. He said he reminded the officers present that they were not to take department-issued shotguns for personal use or keep them at home. He testified that defendant was present at this meeting and acknowledged that he had mistakenly attempted to take a shotgun home the previous day. The jury received evidence that defendant gave several different explanations for the weapon being in his home. He claimed once that it was inadvertent and that he found the weapon in his patrol car. In another explanation he claimed that none of the weapons in the home belonged to the Taylor Police Department, but acknowledged the shotgun being in the home. In yet another statement he admitted that he always takes his shotgun home. The jury had a basis upon which to find that defendant knew the shotgun he had was not his and that he was not allowed to take it or any shotgun home but did so surreptitiously with the intent to retain it from its rightful owners.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens

punishable by imprisonment for not more than 10 years or by a fine of not more than $5,000.00, or both.